UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

<table>
<tr><td>------------------------------------------------------------X</td><td></td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>RICARDO DUVAL and ANGELA</td><td>:</td><td></td></tr>
<tr><td>JIMENEZ,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Plaintiffs,</td><td>:</td><td>1:13-cv-4270-GHW</td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>-against-</td><td>:</td><td>MEMORANDUM OPINION</td></tr>
<tr><td></td><td>:</td><td>AND ORDER</td></tr>
<tr><td>DELTA INTERNATIONAL MACHINERY</td><td>:</td><td></td></tr>
<tr><td>CORP.,</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>Defendant.</td><td>:</td><td></td></tr>
<tr><td></td><td>:</td><td></td></tr>
<tr><td>------------------------------------------------------------X</td><td></td><td></td></tr>
</table>

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 7/27/2015

GREGORY H. WOODS, United States District Judge:

## I.   INTRODUCTION

Plaintiffs Ricardo Duval and his wife Angela Jimenez seek damages stemming from an injury Mr. Duval suffered at work.  In October 2012, Mr. Duval was cutting several large pieces of plastic at his former place of employment, third-party defendant Gotham City Industries, Inc., on a table saw manufactured by defendant Delta International Machinery Corp.  As Mr. Duval was cutting his third piece of plastic, it slipped, and his hand hit the unguarded blade, amputating his fingers on contact.

Before the Court is Delta's motion for summary judgment.  For the reasons outlined below, the motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.  Procedural History

Plaintiffs originally filed this case in state court against both Delta and Gotham.  When plaintiffs voluntarily dismissed their claims against Gotham, Delta removed the case to this Court on the basis of this Court's diversity jurisdiction.  *See* Notice of Removal, Dkt. No. 1.  Delta later filed a

third-party complaint against Gotham for contribution and indemnity, and Gotham answered and filed counterclaims against Delta.

At the close of discovery, Delta filed this motion for summary judgment. Plaintiffs filed opposition papers, Gotham filed a notice that it would not oppose Delta's motion, and Delta filed reply papers.

### B. Facts[1]

Mr. Duval began working at Gotham as a carpenter on October 3, 2012. He had no prior experience with, nor any prior training in, how to operate table saws or other power tools. Three weeks after he was hired, on October 24, 2012, Mr. Duval was using Gotham's table saw, a Delta Unisaw, to cut large pieces of plastic. Gotham had not trained him in how to use or operate the Unisaw. There was no blade guard, of any kind, on the Unisaw, and Mr. Duval was not using a "slide box" or any other mechanism to hold the plastic straight while cutting it. As he was cutting his third piece of plastic, the piece moved and pulled his fingers into contact with the Unisaw's blade, amputating his fingers. *See* Plaintiffs' Memorandum of Law ("Plaintiffs' Memo"), Dkt. No. 42, at p. 4 (citing Duval Deposition, Dkt. No. 43-7, at p. 43-46).

Todd Petre, a partner at Gotham, testified that Gotham acquired the Unisaw at issue here sometime in 2008 or 2009, used, with no blade guard installed, and without the instruction manual and safety placard that would normally come with a new Unisaw.[2] Between the time it acquired the Unisaw and Mr. Duval's accident, Gotham did not modify or make any changes to the Unisaw. The parties agree that there is a warning label on the Unisaw, though they dispute its precise location on

---

[1] Unless otherwise noted, facts are taken from the parties' Local Rule 56.1 Statements of Undisputed Facts. *See* Dkt. Nos. 35, 41, 49.

[2] Plaintiffs dispute these facts because they question Mr. Petre's credibility. *See* Dkt. No. 41 at ¶¶ 31-32. However, they give no factual basis for doubting his credibility with regard to these issues and they offer no evidence which would cast doubt on Mr. Petre's statements. They do not dispute that a safety placard and instruction manual would have been provided to the purchaser of a new Unisaw like this one. *See* Dkt. No. 41 at ¶ 28.

the machine. Both parties provided photos of the warning label and they agree that, prior to the incident, Mr. Duval knew that there were warnings posted on the front of the Unisaw.

Delta manufactured the Unisaw at issue—a "Delta 10-inch Tilting Arbor Unisaw," model number 34-806—in February of 1989. The parties agree that if the Unisaw had been purchased new from Delta, it would have included a "3-in-1" blade guard[3] as a standard accessory. The 3-in-1 guard consists of three parts: a splitter, anti-kickback pawls, and a clear plastic blade cover. It can be used for all "through cuts," those where the user is cutting all the way through a piece of material, slicing it into two pieces. It cannot be used for non-through cuts, where the user is only cutting partway through the material. If a user is performing a non-through cut, she need not fully remove the 3-in-1 guard from the Unisaw; it can instead be "loosened and swung behind the machine."[4] Winter Deposition, Dkt. No. 54-22, at p. 75-76. However, removing the 3-in-1 guard is relatively easy—Delta's representative testified in his deposition that it requires only a screwdriver and takes 1-2 minutes. *See* Nickels Deposition, Dkt. No. 54-18, at p. 19.

There is another type of blade guard relevant to this case: an overarm guard. Overarm guards can accommodate more types of cuts than 3-in-1 guards, and Delta agrees with plaintiffs that they can be left on the Unisaw "[f]or a majority of non-through cuts." Delta's Memorandum of Law ("Delta's Memo"), Dkt. No. 34, at p. 9 (citing Nickels Deposition at 66). Both sides agree that overarm guards, including one manufactured by Delta called the "Delta Uniguard," were on the market and available both prior to and at the time the Unisaw at issue was manufactured in 1989.

The parties agree that Mr. Duval was making cross-cuts, a type of through cut, when he was injured. Both the 3-in-1 guard and the overarm guard are designed to remain in place when making through cuts, thus both types of guards could have accommodated the cuts Mr. Duval was making

---

[3] The parties and their experts also refer to the 3-in-1 guard as a "combination" or "splitter mounted" guard.
[4] Plaintiffs dispute this. *See* Dkt. No. 41 at ¶ 30. But their own expert, Mr. Winter, testified that this was true of the 3-in-1 guard, *see* Dkt. No. 54-22 at p. 75, and they offer no evidence to the contrary.

when he was injured.  The parties agree that if there had been an overarm guard on the Unisaw at

the time of Mr. Duval's accident, his injury would not have occurred.  Plaintiffs' expert also agrees

with Delta that if there had been a 3-in-1 guard on the Unisaw at the time of Mr. Duval's accident,

his injury would not have occurred.  *See* Winter Deposition at 65.

## III.   SUMMARY JUDGMENT STANDARD

Delta is entitled to summary judgment only if it can "show[ ] that there is no genuine dispute

as to any material fact and [it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see*

*also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) ("[S]ummary judgment is proper 'if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law.'" (quoting former Fed. R. Civ. P. 56(c))).  A

genuine dispute exists where "the evidence is such that a reasonable jury could return a verdict for

the nonmoving party," while a fact is material if it "might affect the outcome of the suit under

governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

To defeat this motion for summary judgment, plaintiffs "must come forward with 'specific

facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986) (quoting former Fed. R. Civ. P. 56(e)).  "[M]ere speculation or

conjecture as to the true nature of the facts" will not suffice.  *Hicks v. Baines*, 593 F.3d 159, 166 (2d

Cir. 2010) (citations and internal quotations omitted).  Plaintiffs "must do more than simply show

that there is some metaphysical doubt as to the material facts."  *Matsushita,* 475 U.S. at 586.

In determining whether there exists a genuine dispute as to a material fact, the Court is

"required to resolve all ambiguities and draw all permissible factual inferences in favor of the party

against whom summary judgment is sought."  *Johnson v. Killian*, 680 F.3d 234, 236 (2d Cir. 2012)

(citing *Terry v. Ashcroft*, 336 F.3d 128, 137 (2d Cir. 2003)).  The Court's job is not to "weigh the

evidence or resolve issues of fact." *Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 254 (2d Cir.

2002).  Rather, the Court must decide whether a rational juror could find in favor of the plaintiffs.

*Id.*

## IV.   ANALYSIS

### A.  Design Defect Claim

Plaintiffs claim that the Unisaw at issue was defectively designed.  Under New York law, "[a]

defectively designed product is one which, at the time it leaves the seller's hands, is in a condition

not reasonably contemplated by the ultimate consumer and is unreasonably dangerous for its

intended use, and whose utility does not outweigh the danger inherent in its introduction into the

stream of commerce." *Hoover v. New Holland N. Am., Inc.*, 23 N.Y.3d 41, 53-54 (2014) (quoting *Voss

v. Black & Decker Mfg. Co.*, 59 N.Y.2d 102, 107 (1983)) (internal alteration and quotation marks

omitted).  The question in a design defect case is "whether the product as designed was 'not

reasonably safe'—that is, whether it is a product which, if the design defect were known at the time

of manufacture, a reasonable person would conclude that the utility of the product did not outweigh

the risk inherent in marketing a product designed in that manner." *Voss*, 59 N.Y.2d at 108; *see also

Cover v. Cohen*, 61 N.Y.2d 261, 266-67 (1984) (similar formulation).

Plaintiffs bring design defect claims under both strict liability and negligence theories.  In

*Denny v. Ford Motor Co.*, the New York Court of Appeals quoted with approval a commenter's

observation that "in general, the strict liability concept of 'defective design' is functionally

synonymous with the earlier negligence concept of unreasonable designing." 87 N.Y.2d 248, 258

(1995) (internal alterations omitted).  Although this statement was dicta, *see Jarvis v. Ford Motor Co.*,

283 F.3d 33, 63 (2d Cir. 2002), the New York Court of Appeals has since made it clear that "the

[design defect] standards set forth in *Voss* apply to both" strict liability and negligence claims. *Adams

v. Genie Indus., Inc.*, 14 N.Y.3d 535, 543 (2010).  Under both theories of liability, "[t]he decisive

question is whether plaintiff has produced enough evidence for a jury to find that [the manufacturer]'s product . . . was 'not reasonably safe' as *Voss* defines the term." *Id.* Thus, at the summary judgment stage, plaintiffs must "come forward with specific facts showing that there is a genuine issue for trial" on the question of whether the product was not reasonably safe. *See Matsushita*, 475 U.S. at 587.

### i.   *Elements of a Design Defect Claim*

To show that a product was not reasonably safe and thus defectively designed, plaintiffs must show that:  "(1) the product as designed posed a substantial likelihood of harm; (2) it was feasible to design the product in a safer manner; and (3) the defective design was a substantial factor in causing plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 83 (S.D.N.Y. 2001) (citing *Voss,* 59 N.Y.2d at 108).

Plaintiffs argue that the Unisaw as designed posed a substantial likelihood of harm because the 3-in-1 guard was likely to be removed by users.  Plaintiffs' expert opined that the 3-in-1 guard "is often taken off the saw and discarded by operators."  Winter Report, Dkt. No. 54-21, at p. 12.  He concluded that "[b]y furnishing the saw with [the 3-in-1] guard, Delta increased the likelihood that it would be removed and separated from the saw.  This created the dangerous unguarded condition of the Unisaw which injured Duval."  *Id.* at 17.  As discussed in more detail below, "New York courts have held that 'where a product is purposefully manufactured to permit its use without a key safety feature, it is for the jury to determine the scope of the product's intended purposes and whether the product was reasonably safe when placed in the stream of commerce."  *Gould v. Rexon Indus. Corp.*, No. 3:05-cv-374 (TJM) (DEP), 2006 WL 2301852, at *3 (N.D.N.Y. Aug. 8, 2006) (quoting *O'Bara v. Piekos,* 161 A.D.2d 1118, 1119 (4th Dep't 1990)) (internal alterations omitted).  Delta admits that the Unisaw can be used without the 3-in-1 guard, as the guard must be removed for non-through cuts.

Thus, there is a triable question of fact as to whether the Unisaw's design posed a substantial likelihood of harm.

Plaintiffs argue that it was feasible to design the Unisaw in a safer manner. They claim that rather than including 3-in-1 guards as standard accessories, Delta could have equipped Unisaws with overarm guards. They argue that overarm guards would render the Unisaw safer because such guards can accommodate more cuts and are thus less likely to be removed. Plaintiffs point out that overarm guards were available at the time the Unisaw was manufactured, a point Delta does not dispute. Plaintiffs' expert concluded that "[t]he relatively low cost of the [overarm guard] and its operating advantages relative to Delta's standard [3-in-1] guard confirms that it was a feasible and cost effective way to increase the safety of the Unisaw." Winter Report at 17. Thus, there is a triable question of fact as to whether the availability of the overarm guard made it feasible for Delta to design the Unisaw in a safer manner.

Finally, plaintiffs must show proximate cause—that "the defect was a substantial factor in causing plaintiff's injury." *Voss*, 59 N.Y.2d at 110; *see also, e.g.*, *Colon*, 199 F. Supp. 2d at 83. Delta argues that it is entitled to judgment as a matter of law on the issue of proximate cause. First, Delta asserts that because there was an intervening act of a third party when a prior owner or user removed the guard from the Unisaw, plaintiffs cannot show that any alleged design defect was a proximate cause of Mr. Duval's injury. But "[w]hen, as is usually the case, circumstances permit varying inferences as to the foreseeability of the intervening act, the proximate cause issue is a question of fact for the jury." *Woodling v. Garrett Corp.*, 813 F.2d 543, 555-56 (2d Cir. 1987) (citing *Derdiarian v. Felix Contracting Corp.*, 51 N.Y.2d 308, 315 (1980)). Plaintiffs' expert says in his report that "[t]he woodworking industry, including Delta, is well aware that the [3-in-1] guard, is often taken off the saw and discarded by operators." Winter Report at 12. Thus, the usual case is the case

7

here:  plaintiffs have put forth evidence which permits varying inferences as to the foreseeability of the 3-in-1 guard's removal; therefore proximate cause is a question of fact for the jury.

Delta also asserts that because Gotham uses "slide boxes,"[5] which are incompatible with both 3-in-1 and overarm guards, plaintiffs cannot show that an alleged design defect was a proximate cause of Mr. Duval's injury, because Gotham would have removed *any* guard that may have been present on the Unisaw when they acquired it.  Delta argues that the proximate cause of Mr. Duval's injury "was either plaintiff's own conduct or Gotham's failure to properly train, instruct, and supervise plaintiff with regard to his work."  Delta's Memo at 16.  But, as discussed in more detail below, "if a safety device is *designed* to be removed . . . a jury could find that it was the defective design of the saw, and not the failure to have the blade guard in place [at the time of the injury], that proximately caused plaintiff's injury."  *Guard Ins. Grp., Inc. v. Techtronic Indus. Co.*, No. 11-cv-6254L, 2015 WL 293622, at *4 (W.D.N.Y. Jan. 23, 2015) (citing *LaPaglia v. Sears Roebuck and Co.,* 143 A.D.2d 173, 177 (2d Dep't 1988); *McGavin v. Herrick & Cowell Co.,* 118 A.D.2d 982, 983 (3d Dep't 1986)). Delta's 3-in-1 guard was designed to be removed for certain cuts, thus, given the circumstances here, it is for the jury to determine whether the alleged design defect—rather than or in addition to the absence of the blade guard more generally—was a proximate cause of Mr. Duval's injury.

### ii.  Substantial Modification Defense

Delta also raises a substantial modification defense, arguing that, under *Robinson v. Reed–Prentice Div. of Package Mach. Corp.*, it cannot be held liable because "a third party ma[de] post-sale modifications that destroy[ed] the functional utility of the product's safety feature"; thus, Delta argues, it is "insulated from liability absent a showing that there was some defect in the design of the

---

[5] A slide box, also referred to as a "sled," "cross cutting sled," or "box," is described by the parties' experts as:  "a more accurate miter gauge that better supports the work" and "has partial guarding capabilities," Winter Deposition, Dkt. No. 54-22, at p. 55; something that "creates a barrier to the area of the saw blade," Otterbein Deposition, Dkt. No. 54-26, at p. 96; something used to "hold the work piece in place on the box in a position where it would be supported by a rail," *id.*

safety feature at the time the product left the manufacturer's hands." *Hoover*, 23 N.Y.3d at 56-57

(quoting *Robinson*, 49 N.Y.2d 471, 480 (1980)).

But this is not a case where a third party *modified* a safety feature.  In *Robinson*, the plaintiff's

employer cut a hole in the machine's safety gate to accommodate its production process,

"destroy[ing] the practical utility of the safety features incorporated into the design of the machine."

49 N.Y.2d at 477; *see also, e.g.*, *Wick v. Wabash Holding Corp.*, 801 F. Supp. 2d 93, 99, 103-05

(W.D.N.Y. 2011) (finding substantial modification and thus applying *Robinson* where safety device

was removed from its original hinges and held on by a bungee cord, requiring a separate tool to

secure it in place); *Wyda v. Makita Elec. Works, Ltd.*, 232 A.D.2d 407, 408 (2d Dep't 1996) (finding

material alteration and thus applying *Robinson* where blade guard was held open "by placing a piece

of wood between the guard and the body of the saw").  But, "[i]f a safety device is designed to be

removed, even for limited, specified uses of the product, then the removal of the device may not

constitute a 'material modification' of the product."  *Guard Ins. Grp., Inc.*, 2015 WL 293622, at *3; *cf.*

*Darsan v. Guncalito*, 153 A.D.2d 868, 870 (2d Dep't 1989) (finding that "product was not

'purposefully manufactured to permit its use without the safety guard'" and thus applying *Robinson*

where guard was "affixed to the machine with three fairly heavy rivets which would have to be

removed forcibly" and employer acknowledged it was "not readily removable").

This is a case where a third party removed a safety feature that was designed to be

removable.  Thus, this case falls under the holding of the New York Court of Appeals in *Lopez v.*

*Precision Papers, Inc.*, 67 N.Y.2d 871 (1986), upholding the Second Department's determination that

*Robinson* does not apply in such cases.  The Second Department said:

> Because of the ease with which the . . . guard could be removed and
> the [product]'s added versatility when operated without the guard,
> there is a legitimate jury question as to the scope of the [product]'s
> intended purposes.  In short, the jury must ascertain whether in light
> of these factors, the manufacturer, given its resources and expertise,

> breached its duty by placing a product on the market that is not reasonably safe.

*Lopez v. Precision Papers, Inc.*, 107 A.D.2d 667, 669 (2d Dep't 1985) *aff'd*, 67 N.Y.2d 871 (1986) (internal citations omitted); *see also Gaudette v. Saint-Gobain Performance Plastics Corp.*, No. 11-cv-932 (MAD) (RFT), 2014 WL 1311530, at *13 (N.D.N.Y. Mar. 28, 2014); *Cacciola v. Selco Balers, Inc.*, 127 F. Supp. 2d 175, 186 (E.D.N.Y. 2001) ("[U]nder the *Lopez* qualification of *Robinson,* there is a triable issue of fact as to a design flaw when a product's safety device is designed to be easily removed or bypassed for a specific purpose.); *Hart v. Hytrol Conveyor Co.*, 823 F. Supp. 87, 91 (N.D.N.Y. 1993); *Rios v. Rockwell Int'l Corp.*, 268 A.D.2d 279, 280 (1st Dep't 2000); *LaPaglia v. Sears Roebuck & Co.*, 143 A.D.2d 173, 177 (2d Dep't 1988).

"[T]he point of *Lopez* . . . is that there are tradeoffs when a product's safety mechanism is not permanently affixed. That is, a product may be defectively designed if the removability of its safety features, though providing increased utility, nonetheless makes the product unreasonably dangerous." *Beltran v. Techtronic Indus. N. Am., Inc.*, No. 13-cv-5256 (RJD) (RER), 2015 WL 3651099, at *5 (E.D.N.Y. June 11, 2015). Delta admits that the 3-in-1 guard is removable—and in fact must be removed for certain types of cuts, which increases the Unisaw's utility and versatility. Delta's representative testified in his deposition that removing the 3-in-1 guard requires only a screwdriver and takes 1-2 minutes. *See* Nickels Deposition, Dkt. No. 54-18, at p. 19. Here, like in *Lopez,* the "ease with which the . . . guard could be removed" and the Unisaw's "added versatility when operated without the guard" create a question for the jury. *See* 107 A.D.2d at 669.

The Court finds that the substantial modification defense established in *Robinson* is not available to Delta at the summary judgment stage on the facts as presented here. Delta's motion for summary judgment on plaintiffs' design defect claims is therefore DENIED.

### B.  Failure to Warn Claim

Under New York law, "[a] plaintiff may recover in strict products liability for the manufacturer's failure to warn of the risks and dangers associated with the use of its product.  That duty generally extends to warning ultimate consumers of the dangers resulting from the foreseeable use of the product."  *Urena v. Biro Mfg. Co.*, 114 F.3d 359, 365-66 (2d Cir. 1997) (internal citations omitted).  "A manufacturer has a duty to warn against latent dangers resulting from foreseeable uses of its product of which it knew or should have known" and "of the danger of unintended uses of a product provided these uses are reasonably foreseeable."  *Liriano v. Hobart Corp.*, 92 N.Y.2d 232, 237 (1998) (internal citation omitted).  In addition, "[a] manufacturer . . . may . . . incur liability for failing to warn concerning dangers in the use of a product which come to his attention after manufacture or sale, through advancements in the state of the art, with which he is expected to stay abreast, or through being made aware of later accidents involving dangers in the product of which warning should be given to users."  *Cover v. Cohen*, 61 N.Y.2d 261, 274-75 (1984).

"Unlike design decisions that involve the consideration of many interdependent factors, the inquiry in a duty to warn case is much more limited, focusing principally on the foreseeability of the risk and the adequacy and effectiveness of any warning."  *Liriano*, 92 N.Y.2d at 239.  This is because "although it is virtually impossible to design a product to forestall all future risk-enhancing modifications that could occur after the sale, it is neither infeasible nor onerous, in some cases, to warn of the dangers of foreseeable modifications that pose the risk of injury."  *Id.* at 239-40.

Plaintiffs argue that the Unisaw's warnings are inadequate for a variety of reasons, including that the on-unit label was only in English, located below knee level, and "did not include alternatives to the [3-in-1] blade guard when making a non through cut."  Plaintiffs' Memo at 16.  Delta argues that its warnings were adequate, offering as proof photographs of the warning label, which show that the label informs users to "Always Use Push Sticks for 'Non-Thru' Cuts and When Ripping

Narrow Work," and to "Always Use Fence When Ripping and Miter Gage When Cross-Cutting." *See* Photos, Dkt. Nos. 54-9 and 54-10. Delta also points to the instruction manual, which provides instructions for setting up additional safety measures when performing cuts for which the blade guard cannot be used. *See* Instruction Manual, Dkt. No. 54-16, at p. 19-21.

But "[t]he adequacy of the instruction or warning is generally a question of fact to be determined at trial and is not ordinarily susceptible to the drastic remedy of summary judgment." *Urena*, 114 F.3d at 365-66 (quoting *Beyrle v. Finneron,* 199 A.D.2d 1022, 1023 (4th Dep't 1993)); *see also Arbaiza v. Delta Int'l Mach. Corp.*, No. 96-cv-1224 (RJD), 1998 WL 846773, at *7 (E.D.N.Y. Oct. 5, 1998) ("The case law suggests strongly that the question of whether a particular warning was adequate is a question of fact that should be left to the jury.") (collecting cases). As the New York Court of Appeals has held:

> The nature of the warning to be given and to whom it should be given likewise turn upon a number of factors, including the harm that may result from use of the product without notice, the reliability and any possible adverse interest of the person, if other than the user, to whom notice is given, the burden on the manufacturer or vendor involved in locating the persons to whom notice is required to be given, the attention which it can be expected a notice in the form given will receive from the recipient, the kind of product involved and the number manufactured or sold, and the steps taken, other than the giving of notice, to correct the problem. . . . Generally, the issue will be one of fact for the jury whose function will be to assess the reasonableness of the steps taken by the manufacturer or vendor in light of the evidence concerning the factors listed above presented in the particular case, as well as any expert testimony adduced on the question.

*Cover*, 61 N.Y.2d at 276-77 (internal citations omitted).

The mere existence of the warnings identified by Delta is insufficient for the Court to decide that, as a matter of law, Delta has discharged its duty to warn. It is for the jury to decide, taking into account all the factors listed above, whether the warnings provided by Delta were adequate given the

circumstances of this case.  Delta's motion for summary judgment on plaintiffs' failure to warn claim is DENIED.

### C.  Breach of Implied Warranty

To establish a breach of implied warranty claim based on a defective product, plaintiffs must show that the Unisaw was not "fit for the ordinary purposes for which such goods are used."  *Denny v. Ford Motor Co.*, 87 N.Y.2d 248, 258 (1995) (citing N.Y. U.C.C. § 2-314(2)(c)).  This inquiry "focuses on the expectations for the performance of the product when used in the customary, usual and reasonably foreseeable manners." *Id.* at 258-59.  Breach of implied warranty is a cause of action "involving true 'strict' liability, since recovery may be had upon a showing that the product was not minimally safe for its expected purpose—without regard to the feasibility of alternative designs or the manufacturer's 'reasonableness' in marketing it in that unsafe condition."  *Id.* at 259; *see also Porrazzo v. Bumble Bee Foods, LLC*, 822 F. Supp. 2d 406, 420-21 (S.D.N.Y. 2011) ("[I]n a breach of implied warranty action, the inquiry is not whether there were safer designs available.") (collecting cases).  Privity of contract is not required for a breach of implied warranty claim under New York law.  *See Heller v. U.S. Suzuki Motor Corp.*, 64 N.Y.2d 407, 411 (1985) (citing N.Y. U.C.C. § 2-318).

Thus, plaintiffs' breach of implied warranty claim requires proof that the Unisaw did not meet performance expectations and that Mr. Duval's use of the saw without a blade guard was at least a reasonably foreseeable use.  *See Derienzo v. Trek Bicycle Corp.*, 376 F. Supp. 2d 537, 570 (S.D.N.Y. 2005).  As noted above, plaintiffs have put forth evidence which permits varying inferences as to the foreseeability that the blade guard would be removed.  *See* Winter Report at 12 ("The woodworking industry, including Delta, is well aware that the [3-in-1] guard, is often taken off the saw and discarded by operators.").  Thus, there is an issue of fact as to whether Mr. Duval's use of the Unisaw without a blade guard was a reasonably foreseeable use of the Unisaw.  "Where there

13

are questions about whether a product was being used in a reasonably foreseeable manner, summary judgment is not appropriate." *Derienzo*, 376 F. Supp. 2d at 570.

Delta's motion for summary judgment on this claim is DENIED.

### D. Other Claims

Plaintiffs also bring a claim based on an alleged manufacturing defect.  In order "[t]o plead and prove a manufacturing flaw under either negligence or strict liability, the plaintiff must show that a specific product unit was defective as a result of some mishap in the manufacturing process itself, improper workmanship, or because defective materials were used in construction, and that the defect was the cause of plaintiff's injury." *Colon ex rel. Molina v. BIC USA, Inc.*, 199 F. Supp. 2d 53, 85 (S.D.N.Y. 2001) (quoting *Caprara v. Chrysler Corp.*, 52 N.Y.2d 114, 129 (1981)).  Plaintiffs have put forth no evidence in support of their manufacturing defect claim.  Delta's motion for summary judgment on this claim is GRANTED.

And finally, plaintiffs bring claims for breach of an express warranty.  "To establish the breach of an express warranty, the plaintiff must show that there was an affirmation of fact or promise by the seller, the natural tendency of which was to induce the buyer to purchase and that the warranty was relied upon to the plaintiff's detriment.  The plaintiff must set forth the terms of the warranty upon which he relied." *Barrett v. Black & Decker (U.S.) Inc.*, No. 06-cv-1970 (SCR) (MDF), 2008 WL 5170200, at *12 (S.D.N.Y. Dec. 9, 2008).  Plaintiffs have not produced any evidence of an express warranty.  Delta's motion for summary judgment on this claim is GRANTED.

### V.   CONCLUSION

For the reasons set forth above, Delta's motion for summary judgment is GRANTED in part and DENIED in part.

A jury trial on the remaining claims will begin at 9:00 a.m. on Monday, October 26, 2015. The parties must submit a joint pretrial order and the other pretrial materials outlined in the Court's Individual Rule 5 no later than September 21, 2015. Any motions *in limine* must also be filed by September 21, 2015. As outlined in the Court's Individual Rule 5(B)(i), if any motions *in limine* are filed, opposition papers are due within seven days, or by September 28, 2015; and reply papers are due within four days of the date of service of the opposition papers, or no later than October 2, 2015. The Court will hold a pretrial conference on Wednesday, October 7, 2015 at 4:00 p.m. to discuss the parties' pretrial submissions and, if necessary, to hear oral argument and potentially rule on any motions *in limine*.

The Clerk of Court is directed to terminate the motion pending at docket number 32.

SO ORDERED.

Dated: July 27, 2015
New York, New York

_____
GREGORY H. WOODS
United States District Judge